STATE *EX REL.* CAPERS, v. DERHAM, COMPTROLLER.

1. MANDAMUS—DISPENSARY FUND—SUPPLEMENTARY SCHOOL TAX.— Under constitutional provisions (art. 11, secs. 6 and 12,) and joint resolution of 1898 (22 Stat., 967), the surplus of the net income from the dispensary in State treasury in 1898 can only be divided among the counties after making up the deficiencies provided in the Constitution.

Petition to this Court in original jurisdiction by Ellison Capers, jr., *et al.*, as members of the county board of education for Richland County, *v.* John P. Derham, as comptroller general of the State, for mandamus requiring him to apportion among the counties of the State certain dispensary funds in the State treasury.

*Mr. John P. Thomas, jr.,* for petitioners.

*Mr. U. X. Gunter, Assistant Attorney General,* contra.

March 10, 1899.    The opinion of the Court was delivered by

MR. JUSTICE JONES.    This is an application in the original jurisdiction of this Court for mandamus to compel the comptroller general to apportion certain supplementary school funds, $60,000, now in the State treasury, as net income from the sale of liquors under the dispensary law, and to issue his warrant in favor of the county treasurer of Richland County for $1,700.89, the amount thereof alleged to be due said county.    The point of difference between the petitioners and respondent is this: petitioners contend that

said fund must be apportioned among all the counties in proportion to the enrollment of pupils in said counties, as shown by the report of the State superintendent of education for the year 1895, while respondent contends that said fund is first applicable, in aid of the supplementary taxes provided for in the 6th section of article II. of the Constitution, to supply deficiencies in those counties wherein the poll tax and three mill tax do not yield an amount equal to the $3 per capita of the number of children enrolled in the public schools of each county for the scholastic year ending October 31st, 1895, as appears in the report of the State superintendent of education for that year; and that it is only the surplus remaining after such application which may be apportioned among all the counties in proportion to the enrollment of pupils as shown by the report of the State Superintendent of education for the year 1895.

The rule of apportionment of such funds must be as provided in the 6th and 12th sections of art. II. of the Constitution, and in the joint resolution, approved February 21, 1898, so far as it is consistent with said provisions of the Constitution. Said sections of the Constitution, which must be construed together so as to harmonize, are as follows: Sec. 6. "* * * There shall be assessed on all taxable polls in the State, between the ages of twenty-one and sixty years (excepting Confederate soldiers above the age of fifty years), an annual tax of $1 on each poll, the proceeds of which tax shall be expended for school purposes in the several school districts in which it is collected. Whenever, during the three next ensuing fiscal years, the tax levied by the said county board of commissioners, or similar officers, and the poll tax shall not yield an amount equal to $3 per capita of the number of children enrolled in the public schools of each county for the scholastic year ending the 31st day of October, in the year 1895, as it appears in the report of the State superintendent of education for said scholastic year, the comptroller general shall, for the aforesaid three next ensuing fiscal years, on the first day of each of said

years, levy such an annual tax on the taxable property of the State as he may determine to be necessary to make up such deficiency, to be collected as other State taxes, and apportion the same among the counties in the State in proportion to the respective deficiencies therein. The sum so apportioned shall be paid by the State treasurer to the county treasurers of the respective counties in proportion to the respective deficiencies therein, on the warrant of the comptroller general, and shall be apportioned among the school districts of the counties, and disbursed as other school funds; and from and after the 31st day of December, in the year 1898, the General Assembly shall cause to be levied annually on all the taxable property of the State, such a tax, in addition to the said tax levy, by the said county board of commissioners, or similar officers, and the poll tax above provided, as may be necessary to keep the schools open throughout the State for such length of time in each scholastic year as the General Assembly may prescribe; and said tax shall be apportioned among the counties in proportion to the deficiencies therein, and disbursed as other school funds. Any school district may, by the authority of the General Assembly, levy an additional tax for the support of its schools. Sec. 12. All the net income to be derived by the State from the sale or license for the sale of spirituous, malt, vinous and intoxicating liquors and beverages, not including so much thereof as is now or may hereafter be allowed by law to go to the counties and municipal corporations of the State, shall be applied annually in aid of the supplementary taxes provided for in the 6th section of this article; and if after said application there should be a surplus, it shall be devoted to public school purposes, and apportioned as the General Assembly may determine: *Provided, however,* That the said supplementary taxes shall only be levied when the net income aforesaid from the sale or license for the sale of alcoholic liquors or beverages are not sufficient to meet and equalize the deficiencies for which the said supplementary taxes are provided." Joint resolution, 22 Stat., 967, is as follows:

"That the comptroller general is hereby authorized and directed to draw his warrant on the State treasurer in favor of the county treasurers of the different counties for 'the amount to which each county is entitled out of supplementary school fund arising from the net income to the State from the sale of alcoholic liquors, according to a calculation to be made by him, based on the actual collections of the poll tax and three mill tax collected in each county, so as to raise the amount of school fund in each county, including the poll tax, the three mill tax and said supplementary school fund, to $3 per capita, as provided in the State Constitution. And the comptroller general shall apportion the remainder of said supplementary school fund now in or which may hereafter come into the State treasury during the fiscal year 1898, among the counties of the State, in proportion to the enrollment of the counties as shown by the report of the State superintendent of education for the year 1895, and to draw his warrant therefor as above provided; and that the said supplementary school fund be annually apportioned and paid out in the manner herein provided." By these two sections of the Constitution it is the duty of the comptroller general to apportion the net income derived during the years 1896, 1897 and 1898 from the sales of liquors to make up deficiencies in the school fund in each county for the years 1896, 1897 and 1898, respectively, so that the school fund in each county in each of said years shall equal $3 per capita of pupil enrollment in each county according to the enrollment of 1895. So far as the net incomes from the sale of liquor for the years 1896, 1897 and 1898 are concerned, the rule of apportionment fixed in the joint resolution could only operate to dispose of any surplus remaining of the net income from the sale of liquors in each of said years after application to make up deficiencies in the school fund in each of said years. It is clear, therefore, that petitioners, in order to have the fund in question apportioned as contended for by them, must show that said fund is surplus remaining after application to meet deficiencies. This showing they fail to

make. It does appear that the fund in question, $60,000, was received into the State treasury during the year 1898, some time after April 20th, on which day $70,499.55 of similar funds were apportioned and paid out among twenty-four counties of the State, to make up deficiencies for the year 1896; but we are not informed whether the $60,000 constitute the net income for 1897 or for 1898, nor are we informed whether said sum is needed to make up deficiencies in the school funds of counties for the year 1897 or 1898, nor whether said sum, or any portion thereof, is surplus, after application to deficiencies as required by the Constitution.

The writ of mandamus prayed for is refused and the petition dismissed.